IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BRIDGET DIAS, an individual,<br><br>        Plaintiff,<br><br>   vs.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, a congressionally-chartered government-sponsored entity of the United States; FNMA ACT/ACT DEFAULTS & PICONS, an assumed business name of Federal Mortgage Association other Federal National Mortgage Association; BANK OF AMERICA, N.A., a National Banking Association formerly known as Countrywide Bank FSB; BAC HOME LOAN SERVICING, LP, formerly known as Countrywide Home Loan, Inc.; DOES 1-100, inclusive; FEDERAL HOUSING FINANCE AGENCY, in its capacity as conservator of Federal National Mortgage Association; BANK OF AMERICA CORPORATION,<br><br>        Defendants. | CIVIL NO. 12-00394 DKW KSC<br><br>**ORDER (1) GRANTING DEFENDANT FEDERAL HOUSING FINANCE AGENCY'S MOTION TO DISMISS AMENDED COMPLAINT, AND (2) GRANTING IN PART AND DENYING IN PART REMAINING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |

1

**ORDER (1) GRANTING DEFENDANT FEDERAL HOUSING FINANCE
AGENCY'S MOTION TO DISMISS AMENDED COMPLAINT, AND (2)
GRANTING IN PART AND DENYING IN PART REMAINING
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

## INTRODUCTION

Before the Court are the following motions: (1) Defendant Federal

Housing Finance Agency's ("FHFA") Motion to Dismiss the Amended Complaint,

filed on May 31, 2013 ("FHFA Motion"); and (2) Defendants Federal National

Mortgage Association ("Fannie Mae"), Bank of America, N.A. formerly known as

Countrywide Bank, FSB and successor by merger to BAC Home Loans Servicing,

LP formerly known as Countrywide Home Loans Servicing, LP ("BANA"), and

Bank of America Corporation's ("BAC") Motion to Dismiss Amended Complaint,

filed on May 31, 2013 ("Fannie Mae Motion").   The Court held a hearing on the

motions on September 20, 2013.   After careful consideration of the supporting and

opposing memoranda, the arguments of counsel, and the relevant legal authority, the

FHFA Motion is GRANTED and the Fannie Mae Motion is GRANTED IN PART

and DENIED IN PART.   Plaintiff is permitted leave to amend specific claims as set

forth in this Order.

## **BACKGROUND**

Plaintiff Bridget Dias filed her Amended Complaint to Set Aside Foreclosure Sale and Monetary Damages on October 23, 2012 ("Complaint").   The Complaint alleges that, on December 9, 2005, Plaintiff entered into a transaction with Quicken Loans, Inc. ("Quicken"), obtaining a $282,400 loan secured by a mortgage on her principal residence at 206B East Kinai Place, Hilo, Hawaii 96720 (the "property").   According to Plaintiff, documentation of the loan in favor of Quicken utilized an FNMA form ("First Loan").   Complaint ¶ 13.   On February 1, 2006, Plaintiff received notice of the assignment of servicing rights to her loan to Countrywide Home Loans, Inc. ("Countrywide").   *Id.*   On October 13, 2006, Plaintiff entered into a second loan repayment and security agreement on the property with Countrywide ("Second Loan").   Complaint ¶ 14.   Plaintiff made all mortgage payments through January 2009.   Complaint ¶ 22.   Plaintiff modified the Second Loan with BAC in June 2009.   Complaint ¶ 23.

According to Plaintiff, in July 2008, BANA acquired Countrywide, which thereafter changed its name to BAC.   BAC is the current servicer of the First Loan.   Plaintiff entered into a Forbearance Agreement with BAC beginning September 1, 2009, calling for a deferral period payment for six months, ending February 1, 2010.   The Complaint alleges that, under the Forbearance Agreement,

3

BAC promised to suspend any scheduled foreclosure sale provided Plaintiff continued to meet her payment obligations and "at the end of the trial period she would receive a modification of her loan."   Complaint ¶ 24.   Plaintiff claims that although she complied with the Forbearance Agreement, BAC, on December 9, 2009, sent her a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("NOI"), and recorded a copy with the State of Hawaii Bureau of Conveyances as Doc. No. 2009-185138, which had the effect of clouding her title and setting a foreclosure date of February 1, 2010.   Complaint ¶ 25.

Plaintiff attempted to negotiate a loan modification with BAC, but was told that she had to wait until the end of the Forbearance Agreement period on or after February 1, 2010.   Complaint ¶ 26.   On May 22, 2010, she was told by "someone at BAC" that her loan modification application had been lost, and that she would have to apply again.   Complaint ¶ 29.   Plaintiff tried several times   during the summer of 2010 to obtain a loan modification from BAC, without success and with poor communication from BAC. 2 Complaint ¶¶ 30-33.   On August 2, 2010, Plaintiff received a certified mail notice that a foreclosure sale of the property was set for that same day.   Complaint ¶ 34.   According to Plaintiff, BAC conducted the foreclosure sale and Fannie Mae was the only bidder on the property.   Complaint ¶ 35.   Plaintiff alleges that BANA then sent her a letter in 2011 attempting to collect

4

on the First Loan, even though Plaintiff had already lost the property to foreclosure. Complaint ¶ 37.

Plaintiff argues that Defendants had a duty under the Home Affordable Modification Program ("HAMP") to provide fair loan mitigation prior to holding a foreclosure sale.   Complaint ¶¶ 38-54.   She also claims that the non-judicial foreclosure conducted by BAC was defective because it did not comply with Hawaii Revised Statutes ("HRS") §§ 667-5–10.   Complaint ¶¶ 55-57.   Last, Plaintiff alleges that BANA and BAC do not hold the Note and lack legal standing to foreclose.   Complaint ¶¶ 58-61.

Plaintiff's Complaint alleges the following causes of action: (1) violation of HRS Chapter 667 based on lack of standing to foreclose against BAC, BANA, and Fannie Mae; (2) violation of HRS § 667-5 for failure to provide public announcement of continued date of foreclosure and to follow initial terms of sale against BAC, BANA, and Fannie Mae; (3) violation of "Unfair Debt Collection Practices Act" against BAC and BANA for failure to cease collection efforts after debt was paid in full; (4) another violation of "Unfair Debt Collection Practices Act" for collecting a debt they do not own against BAC and BANA; (5) breach of HAMP contract, against BAC and Fannie Mae; (6) unfair and deceptive acts and practices ("UDAP") in violation of HRS § 480-2 against BAC and Fannie Mae; (7) wrongful

foreclosure against BAC and BANA; (8) promissory estoppel against BAC;

(9) fraudulent misrepresentation against BAC and BANA; (10) violation of

constitutional right of due process against Fannie Mae and FHFA; and (11) quiet

title against any Defendant claiming an interest in the property.[1]   Plaintiff requests

the following relief: set aside the August 2, 2010 foreclosure sale and transfer of

title; determine that Plaintiff is the prevailing party; and award damages and costs, as

well as treble damages, punitive damages, attorneys' fees and costs.

Defendants seek the dismissal of all claims.   The Fannie Mae Motion

notes that the recorded Mortgagee's Affidavit of Foreclosure Under Power of Sale

("Affidavit of Foreclosure") states that each postponement of the sale was publicly

announced "by crying out the postponement date at the time and place of the

scheduled auction," and that BANA, not Fannie Mae, purchased the property.

Mem. in Supp. of Fannie Mae Motion at 6 (quoting Decl. of Counsel, Ex. 3).

Defendants note that Plaintiff alleges that she entered into a Forbearance Agreement

with BANA on September 1, 2009, but does not allege that the Forbearance

Agreement required Defendants to provide Plaintiff with a HAMP loan

modification.   Rather, Plaintiff claimed that she was told that she could not apply

---

[1]  Although the Complaint purports to assert thirteen causes of action, there are only eleven due to
Plaintiff's misnumbering errors.   There is no seventh or ninth cause of action.

for a HAMP loan modification until after the forbearance plan ended on February 1,

2010.   Fannie Mae Reply at 8 n.4 (citing Complaint ¶ 26).

FHFA moves to dismiss with prejudice Plaintiff's lone constitutional

claim, on the ground that Fannie Mae is not a government actor.   Rather, it asserts

that Fannie Mae is a private corporation presently in the temporary conservatorship

of the FHFA.

## STANDARD OF REVIEW

Defendants bring their respective motions pursuant to Federal Rule of

Civil Procedure 12(b)(6).   Rule 12(b)(6) permits a motion to dismiss for failure to

state a claim upon which relief can be granted.   Pursuant to *Ashcroft v. Iqbal*, "[t]o

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"   555 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

"[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."   *Id.*   Accordingly, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a]

claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

7

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only

permit the court to infer "the mere possibility of misconduct" do not constitute a

short and plain statement of the claim showing that the pleader is entitled to relief as

required by Rule 8(a)(2).   *Id*. at 679.

## DISCUSSION

## I.   Fannie Mae Motion

### A.   HRS Chapter 667 Claims (Counts 1 and 2)

Plaintiff's first two counts allege violations of HRS § 667-5.   The

statute provides in pertinent part:

> (a) When a power of sale is contained in a mortgage, and where
> the mortgagee, the mortgagee's successor in interest, or any
> person authorized by the power to act in the premises, desires to
> foreclose under power of sale upon breach of a condition of the
> mortgage, the mortgagee, successor, or person shall be
> represented by an attorney who is licensed to practice law in the
> State and is physically located in the State.   The attorney shall:
>
> (1) Give notice of the mortgagee's, successor's, or person's
> intention to foreclose the mortgage and of the sale of the
> mortgaged property as follows:
>
> > (A) By serving, not less than twenty-one days before the
> > date of sale, written notice of intent to foreclose on all
> > persons entitled to notice under this part in the same
> > manner as service of a civil complaint under chapter 634
> > of the Hawaii rules of civil procedure; provided that in the
> > case of nonjudicial foreclosure of a lien by an association
> > against a mortgagor who is not an owner-occupant, the

8

association shall mail the notice by certified or registered mail, not less than twenty-one days before the date of sale, to:

(i) The unit owner at the address shown in the records of the association and, if different, at the address of the unit being foreclosed; and

(ii) All mortgage creditors whose names are known or can be discovered by the association; and

(B) By publication of the notice once in each of three successive weeks, constituting three publications with the last publication to be not less than fourteen days before the day of sale, in a daily newspaper having the largest general circulation in the specific county in which the mortgaged property lies; provided that for property located in a county with a population of more than one hundred thousand but less than three hundred thousand, the public notice shall be published in the newspaper having the largest circulation expressly in the eastern or western half of the county, corresponding to the location of the subject property;

(2) Give notice of the mortgagor's right to elect to participate in the mortgage foreclosure dispute resolution program pursuant to section 667-75 or to convert the nonjudicial power of sale foreclosure to a judicial foreclosure pursuant to section 667-53; and

(3) Give any notices and do all acts as authorized or required by the power contained in the mortgage.

(b) Copies of the notice required under subsection (a) shall be:

(1) Filed with the state director of taxation; and

9

(2) Posted on the premises not less than twenty-one days before the day of sale.

(c) Upon the request of any person entitled to notice pursuant to this section and sections 667-5.5 and 667-6, the attorney, the mortgagee, successor, or person represented by the attorney shall disclose to the requestor the following information:

(1) The amount to cure the default, together with the estimated amount of the foreclosing mortgagee's attorneys' fees and costs, and all other fees and costs estimated to be incurred by the foreclosing mortgagee related to the default prior to the auction within five business days of the request; and

(2) The sale price of the mortgaged property once auctioned.

(d) **Any sale, of which notice has been given pursuant to subsections (a) and (b) may be postponed from time to time by public announcement made by the mortgagee or by a person acting on the mortgagee's behalf**.  Upon request made by any person who is entitled to notice pursuant to section 667-5.5 or 667-6, or this section, the mortgagee or person acting on the mortgagee's behalf shall provide the date and time of a postponed auction, or if the auction is canceled, information that the auction was canceled.  The mortgagee, within thirty days after selling the property in pursuance of the power, shall file a copy of the notice of sale and the mortgagee's affidavit, setting forth the mortgagee's acts in the premises fully and particularly, in the bureau of conveyances.

HRS § 667-5 (emphasis added).

The first two causes of action allege that BANA did not have the right to foreclose because the Assignment was defective,[2] and that Plaintiff did not have the required notice of the August 2, 2010 foreclosure sale. *See* Complaint ¶¶ 64-73.

The recorded Assignment states that Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Quicken Loans, transferred all of its right, title and interest in the Mortgage to BANA on August 31, 2009. Decl. of Counsel, Ex. C (Assignment of Mortgage) at 1. In light of the express disclosures in the Mortgage giving MERS the authority to act on behalf of Quicken Loans and the transfer of the Mortgage to BANA, Plaintiff has no basis to challenge the Assignment. Indeed, in numerous instances, courts within this district have rejected similar claims by numerous borrowers challenging MERS's authority to assign a mortgage on behalf of a lender. *See, e.g., Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at \*4 & \*5 n. 5 (D. Haw. Feb. 23, 2012) (explaining that a borrower cannot challenge an assignment to which he was not a party, and that

---

[2] The Court notes that although the allegedly defective Assignment, recorded in the Bureau of Conveyances on October 12, 2009 as Document number 2009-156207, is not attached to the Amended Complaint, it is attached to the Fannie Mae Motion. Courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997)(When ruling on a motion to dismiss, a court may also consider documents central to the allegations in a complaint even if the documents are not attached to the complaint, so long as the authenticity of the documents is undisputed).

plaintiff may not assert claims based on the argument that MERS lacked authority to assign its right to foreclose); *Lindsey v.. Meridias Cap., Inc*., 2012 WL 488282, at *3 n. 6 (D. Haw. Feb. 14, 2012) ("'[A]ny argument that MERS lacked the authority to assign its right to foreclose and sell the property based on its status as 'nominee' cannot stand in light of [*Cervantes v. Countrywide Home Loans*, 656 F.3d 1034 (9th Cir. 2011).]" (quoting *Velasco v. Sec. Nat'l Mortg. Co*., 2011 WL 4899935, at *11 (D. Haw. Oct. 14, 2011)); *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 2011 WL 6749813, at *16 (D. Haw. Dec. 22, 2011) (dismissing without leave to amend claim asserting that MERS lacks standing to foreclose); *Abubo v. Bank of New York Mellon*, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011) (holding that "the involvement of MERS in the assignment cannot be a basis for voiding the assignment, much less for a claim of fraud").

Moreover, courts in this district have routinely rejected claims that the absence of the assignment of a mortgage and the physical delivery of the note somehow nullifies the foreclosure sale.  *See, e.g., White v. IndyMac Bank, FSB*, 2012 WL 966638, at *8 (D. Haw. Mar. 20, 2012) (rejecting a "show me the note" argument for an unfair and deceptive acts or practices claim); *Del Piano v. Mortg. Elec. Registration Sys, Inc*., 2012 WL 621975, at *10 (D. Haw. Feb. 24, 2012) (rejecting a "show me the note" claim as "baseless").   Here, Plaintiff has presented

12

no plausible allegations that BANA did not have the authority to foreclose pursuant to HRS § 667-5.

With respect to Plaintiff's claim that Defendants failed to announce the continued sale date and that she did not receive timely notice of the August 2, 2010 sale, her claims are flatly contradicted by the Affidavit of Foreclosure, of which the Court takes judicial notice.[3]   That recorded document states that:

> Upon the scheduled date, time and place, caused said sale to be postponed to 08/02/2010.   Each postponement was publicly announced by crying out the postponement date at the time and place of the scheduled auction.   The sale was conducted and the subject mortgaged property declared sold to BAC HOME LOANS SERVICING, LP[.]

Decl. of Counsel, Ex. E (Affidavit of Foreclosure) ¶ 3(d).

In light of the Affidavit of Foreclosure, Plaintiff argues only that "no sale at all can be conducted while a HAMP loan modification is pending."   Mem. in Opp'n to Fannie Mae Motion at 16.   Plaintiff, however, does not have standing to enforce the HAMP guidelines.   "[T]here is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP."   *Dodd v. Fed. Home*

---

[3] *See United States v. 14 .02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (the court may take judicial notice of "matters of public record"); *Lindsey v. Matayoshi*, 2012 WL 1656931, at *4 (D. Haw. May 9, 2012) (explaining when the court may take judicial notice of documents).

*Loan Mortg. Corp.*, 2011 WL 6370032, at *12 (E.D. Cal. Dec. 19, 2011) (collecting

cases).

> HAMP is a loan modification program designed to reduce
> delinquent and at-risk borrowers' monthly mortgage payments.
> HAMP was authorized by Congress as part of the Emergency
> Economic Stabilization Act of 2008, which has the stated
> purpose of giving the Secretary of the Treasury the "authority
> and facilities" necessary "to restore liquidity and stability to the
> financial system of the United States."   12 U.S.C. § 5201(1).
>
> Under the terms of the HAMP agreement and Treasury
> regulations, [a lender] is required to evaluate borrowers for loan
> modifications within thirty days, grant loan modifications to
> qualified borrowers, forebear from foreclosure during the time
> that an application for a loan modification is pending, and advise
> loan modification applicants of the prohibition on foreclosure
> sales (*see* Dkt. No. 11 (Treasury Department's Supplemental
> Directive 10–02)).

*Newell v. Wells Fargo Bank, N.A.*, 2012 WL 27783, at *5 (N.D. Cal. Jan. 5, 2012).

Any alleged violation of the HAMP guidelines, however, does not

create a claim for violation of HRS § 667-5.   For example, in *Soriano v. Wells*

*Fargo Bank, N.A.*, 2013 WL 310377, at * 9 (D. Haw. Jan. 25, 2013), the court

allowed evidence of violations of the HAMP guidelines to proceed on a common

law negligence theory, but not as a stand-alone claim.   *Soriano* explained:

> Among other things, the HAMP guidelines provide that, "[t]o
> ensure that a borrower currently at risk of foreclosure has the
> opportunity to apply for HAMP, servicers should not proceed
> with a foreclosure sale until the borrower has been evaluated for

14

> the program and, if eligible, an offer to participate in HAMP has been made."   U.S. Dep't of the Treasury, Home Affordable Modification Program Guidelines, § VII, 610.04.04.   This court permits Count IV to proceed to the extent an alleged breach of the HAMP Guidelines is offered as evidence of common law negligence, not to the extent a claim directly under the HAMP Guidelines is asserted.

*Soriano v. Wells Fargo Bank, N.A.*, 2013 WL 310377, at * 9 (D. Haw. Jan. 25, 2013).   Here, in contrast to *Soriano*, no such separate common law claim has been asserted.

Although Plaintiff alleges that no sale can occur while a HAMP loan modification is pending, nothing in HRS § 667-5 proscribes the activities undertaken by Defendants here.   Nor does Plaintiff present any factual allegations in support of her claims that the Assignment of Mortgage is invalid, or that she did not receive required notice of the foreclosure.   Accordingly, Plaintiff fails to state a claim for violations of HRS Chapter 667.   Because these claims are based on the allegedly defective Assignment of Mortgage and violations of the HAMP guidelines, the Court concludes that amendment of these claims would be futile. Counts 1 and 2 are DISMISSED with prejudice.

### B.   Fair Debt Collection Practices Act Claims (Counts 3 and 4)

Plaintiff alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e.

> After its nonjudicial foreclosure of Plaintiffs home [BANA] sent a letter to Plaintiff[] still attempting to collect on the debt owed on the mortgage that had been foreclosed on.   In a letter dated only with its year, 2011, well after the foreclosure sale took place, Bank of America continued to harass Plaintiff by asserting that the debt was still owed to them.

Complaint ¶¶ 78-79.   She also alleges that the "publicly record[ed] assignment of mortgage from MERS to [BANA] was false. . . By recording in the public records that it owned a debt that, in fact, it does not, and then attempting to collect on that debt . . . is a deceptive practice."   Complaint ¶¶ 83-84.   Defendants move to dismiss these claims on the grounds that Plaintiff asserts no facts in support of these allegations, does not provide a copy of the alleged 2011 letter, and because the publicly recorded documents contradict Plaintiff's allegations.

The FDCPA prohibits various collection practices by "debt collectors" to, among other things, "eliminate abusive debt collection practices."   15 U.S.C. § 1692(e) (describing the purpose of the FDCPA).   The FDCPA defines "debt collector" as follows:

> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.   Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any

16

name other than his own which would indicate that a third person is collecting or attempting to collect such debts.   For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.   The term does not include—

> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
>
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;
> . . . .
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6).   To be liable for a violation of the FDCPA, the defendant must, as a threshold requirement, be a "debt collector" within the meaning of the FDCPA.   *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

Defendants argue that they are not "debt collectors" under the statute. The Court notes that --

> original lenders, creditors, mortgage servicing companies, and
> mortgage brokers generally do not qualify as "debt collectors."
> *See, e.g., Lyons v. Bank of Am., NA*, 2011 WL 3607608, at *12
> (N.D. Cal. Aug. 15, 2011) ("The FDCPA applies to those who
> collect debts on behalf of another; it does not encompass
> creditors who are collecting their own past due accounts.");
> *Radford v. Wells Fargo Bank*, 2011 WL 1833020, at *15 (D.
> Haw. May 13, 2011) (collecting cases stating that original
> lenders and mortgage servicing companies are not "debt
> collectors"); *Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL
> 4909574, at *5 (D. Haw. Nov. 24, 2010) (dismissing FDCPA
> claim because the mortgage broker was not a "debt collector").

*Long v. Deutsche Bank Nat. Trust Co.*, Civil No. 10–00359 JMS/KSC, 2011 WL

5079586, at *14 (D. Haw. Oct. 24, 2011).   Here, however, because Plaintiff stopped

making payments on the loan in January 2009, it appears that the debt was already in

default when it was assigned on August 31, 2009.   Complaint ¶¶ 22-24.   Because

the debt was already in default at the time of the assignment, Defendants have not

established that they are not debt collectors under the FDCPA as a matter of law, and

the Court will not dismiss the claims on this basis at this time.   15 U.S.C. §

1692a(6)(F); *see Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)

("The legislative history of section 1692a(6) indicates conclusively that a debt

collector does not include the consumer's creditors, a mortgage servicing company,

or an assignee of a debt, *as long as the debt was not in default at the time it was

assigned*.") (emphasis added).

18

1.   **Count 3**

In Count 3, Plaintiff alleges that in a letter "dated only with its year, 2011, well after the foreclosure sale took place, Bank of America continued to harass Plaintiff by asserting that the debt was still owed to them.   By virtue of the foreclosure, the debt on her first mortgage was paid and there was no deficiency judgment."   Complaint ¶¶ 79-80.   In her opposition, Plaintiff reiterates that it "is the post-foreclosure attempt to collect a debt that is being challenged."   Mem. in Opp'n to Fannie Mae Motion at 18.   BANA asserts that Plaintiff does not provide a copy of the supposed 2011 letter, and that such "naked assertions" cannot survive a motion to dismiss.   The Court disagrees.

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).   A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief, taking all allegations of material fact as true and construing them in the light most favorable to the nonmoving party.   *Id*. at 570; *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).   "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."   *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

Here, Plaintiff's allegations that Defendants attempted to collect on the Mortgage post-foreclosure via a 2011 letter are sufficient to state a claim.   The Fannie Mae Motion is DENIED as to Count 3.

### 2.   **Count 4**

Count 4 alleges that the "publicly record[ed] assignment of the mortgage from MERS to [BANA] was false.   [BANA] later admitted to Plaintiff in writing that the actual owner of the mortgage and note was Defendant [Fannie Mae]."   Complaint ¶¶ 83-84.   As discussed above, the publicly recorded Assignment of Mortgage shows that the Mortgage was assigned to BANA on August 31, 2009.   Here, Plaintiff has presented no plausible allegations that the publicly recorded Assignment of Mortgage was false.   Whether or not BANA later told Plaintiff at an unspecified time "in writing that the actual owner of the mortgage and note was Defendant [Fannie Mae]" does not change the fact that the recorded Assignment of Mortgage shows that BANA—and not Fannie Mae—was assigned the Mortgage.   Because the Court is not required to accept unwarranted and unsupported statements of fact that are patently contradicted by the public record, *see Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), Plaintiff's allegations that BANA did not own the debt or misrepresented in the public record that it owned the debt do not state claims for violations of the FDCPA.   Plaintiff

nonetheless may be able to cure the deficiencies in this claim, and therefore, the

Court GRANTS Plaintiff leave to amend Count 4.

### C.  **Breach of Contract – HAMP (Count 5)**

Plaintiff alleges in Count 5 that BAC failed to comply with the

requirements of HAMP and "breached its duty to Plaintiff as the intended third party

beneficiary of its agreement with [Fannie Mae] and the U.S. Treasury for failing to

modify the Plaintiff's loan[.]"   Complaint ¶ 96.   As discussed above, there is no

private right of action for violations of the HAMP guidelines.   Further, there is no

evidence or allegation of a HAMP Trial Payment Plan ("TPP"), which might support

a breach of contract cause of action.   *See Corvello v. Wells Fargo Bank, NA,* 728

F.3d 878, 884 (9th Cir. 2013) ("Where, as here, borrowers allege . . . that they have

fulfilled all of their obligations under the TPP, and the loan servicer has failed to

offer a permanent modification, the borrowers have valid claims for breach of the

TPP agreement.").   Nor is Plaintiff an intended third-party beneficiary of any

HAMP agreement between Defendants and the Treasury.

> HAMP sets forth guidelines that loan servicers should consider
> in reviewing a modification request, and does not require that
> loan servicers agree to modify anything.   *See Escobedo v.*
> *Countrywide Home Loans, Inc*., 09CV1557 BTM (BLM), 2009
> WL 4981618, *2-*3 (S.D. Cal. Dec. 15, 2009).   The nature of
> HAMP does not provide Plaintiffs with a private right of action.
> Parties benefitting from a government contract "are generally

> assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Zendejas v. GMAC Wholesale Mortg. Corp.*, 1:10-CV00184, 2010 WL 2629899, *3 (E.D. Cal. June 29, 2010) (citing *Escobedo*, 2009 WL 4981618, at * 1–*2).   Qualified borrowers under HAMP "'would not be reasonable in relying on the Agreement as manifesting an intention to confer a right on him because the agreement does not require [a loan servicer to] modify eligible loans.'" *Id.* (quoting *Escobedo*, 2009 WL 49181618, at *3). Thus, Plaintiffs lack standing to challenge HAMP compliance.

*Kilaita v. Wells Fargo Home Mortg.*, 2011 WL 6153148, at *9 (N.D. Cal. Dec. 12, 2011).   Because this claim is based on alleged violations of the HAMP guidelines, the Court concludes that amendment of the claims would be futile.   Count 5 is DISMISSED with prejudice.

### D.   HRS § 480-2 UDAP Claim (Count 6)

In Count 6, Plaintiff alleges that "BAC failed to provide the Plaintiff with the opportunity to process a loss mitigation application of [her] loan before proceeding with the non-judicial foreclosure sale."   Complaint ¶ 100.   She further alleges that,

> [a]fter losing the Plaintiff's first completed application, the Defendant BAC solicited another application for loss mitigation and before a review of her submitted financial package BAC continued to schedule the non-judicial foreclosure proceedings to take her home.   At one point it even offered to forestall the foreclosure if Plaintiff paid an unfair amount of money.

Complaint ¶ 102.

22

Section 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." The Hawaiʻi Supreme Court "has described a deceptive act or practice as having the capacity or tendency to mislead or deceive." *Courbat v. Dahana Ranch, Inc.*, 111 Hawaiʻi 254, 261, 141 P.3d 427, 434 (2006) (citation and quotation marks omitted). More specifically, under Hawaiʻi law, "a deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under circumstances where (3) the representation, omission, or practice is material." *Id*. at 262, 141 P.3d at 435 (quotation and alteration signals omitted). "A representation, omission, or practice is considered 'material' if it involves 'information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Id.* (citing *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000)).

Pursuant to § 480-13, a successful UDAP claim must establish "four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant." *Davis v. Four Seasons Hotel Ltd*., 122 Haw. 423, 455, 228 P.3d 303, 325 (2010). Plaintiff's allegations fail to sufficiently address these elements.

23

For example, Plaintiff must allege that she suffered damages as a result of Defendants' conduct that go beyond her speculative allegation of an unspecified loss of "equity, as well as her past and future investment."   Complaint ¶ 29. Plaintiff's vague allegation of damages contains insufficient factual detail to meet the Rule 8 pleading standard.

If Plaintiff elects to include a UDAP claim in an amended complaint, she must comply with the terms of this Order.   To the extent the claim is based on fraud, Plaintiff must allege "the time, place, and content of the fraudulent representation; conclusory allegations do not suffice."   *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted). Allegations of fraud must be pled with particularity.   *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232–33 (D. Haw. 2010) (regarding pleading requirements for chapter 480).   Next, a UDAP claim cannot be based on a HAMP guidelines violation because no private right of action exists to enforce them.   *See Rey v. Countrywide Home Loans, Inc.*, 2012 WL 253137, at *9 (D. Haw. Jan. 26, 2012).   Finally, her UDAP claim cannot be based on any alleged failure to offer a loan modification because Plaintiff has established no right to such modification. Although Plaintiff alleges that Defendants represented that she may qualify for a

loan modification, the parties never entered into an agreement beyond the six-month

Forbearance Agreement.   *See* Complaint ¶¶ 26-36.

       For these reasons, Count 6 is DISMISSED, and Plaintiff is GRANTED

leave to amend in conformity with this Order.

       **E.**    **Wrongful Foreclosure (Count 8)**

       Plaintiff alleges in Count 8 that the property's foreclosure was

"wrongful and without right" because --

> [a]t the same time that representatives of Defendants BAC and
> [BANA] were reassuring the Plaintiff that the scheduled
> foreclosure sale of Plaintiff's home would be postponed during
> the Plaintiff's pending HAMP loss mitigation, the attorneys for
> Defendants BAC and [BANA] proceeded to conduct a
> foreclosure sale of her home upon just a couple of hour's notice.

Complaint ¶ 109.   Defendants move to dismiss this Count on the ground that it is   a

breach of contract claim in disguise, without any citation by Plaintiff to the contract

provision allegedly breached.   Plaintiff counters that "wrongful foreclosure" is "a

civil tort," not a breach of contract, claim.   Mem. in Opp'n to Fannie Mae Motion at

27.

       First, a wrongful foreclosure claim is a state law claim.   *Doran v.*

*Wells Fargo Bank*, 2011 WL 5239738, at *9 (D. Haw. Oct. 31, 2011).   There is no

case law from the Hawaiʻi state courts addressing whether Hawaiʻi recognizes this

claim.   Courts within this district have found that, although Hawai'i has not

specifically recognized a common law wrongful foreclosure cause of action, there

are circumstances when a wrongful foreclosure claim may exist under Hawai'i law.

For example, a wrongful foreclosure claim may exist where the foreclosure process

failed to comply with HRS Chapter 667 because the foreclosing party allegedly

failed to provide the required notices or where the foreclosure was allegedly invalid

because the entity that purportedly assigned the foreclosing party its interest in the

subject loan was dissolved prior to executing the assignment.   *See Swartz v. City

Mortg., Inc.*, 911 F. Supp. 2d 916, 947 (D. Haw. 2012) (quoting *Matsumura v. Bank

of Am., N.A.*, 2012 WL 463933, at *3 (D. Haw. Feb. 10, 2012)).   In *Matsumura*, the

district court explained that a wrongful foreclosure claim will not lie where the

foreclosing party properly provided all required notices, and

> although Hawaii has not specifically recognized a common law
> wrongful foreclosure cause of action, "[s]ubstantive wrongful
> foreclosure claims [in other jurisdictions] typically are available
> after foreclosure and are premised on allegations that the
> borrower was not in default, or on procedural issues that resulted
> in damages to the borrower."   *Cervantes v. Countrywide Home
> Loans,* 656 F.3d 1034, 1043 (9th Cir. 2011).

2012 WL 463933, at *3.   As set forth above with respect to Counts 1 and 2,

Plaintiff's claims for violations of HRS Chapter 667 fail to state valid claims, based

on the Assignment of Mortgage and required notices.   The Complaint does not

26

contain any plausible factual allegations to support a claim that MERS, the entity assigning Defendants its interest in the Mortgage, did not exist or otherwise lacked standing to assign the loans to Defendants.   *See Lowther v. U.S. Bank N.A.*, 2013 WL 4777129, at *19 -*21 (D. Haw. Sept. 4, 2013).   Accordingly, Count 8 fails to state a cognizable claim for the tort of wrongful foreclosure.

The Court notes that, at the hearing on the motions, Plaintiff's counsel argued, contrary to the arguments in her written brief, that the allegations were more properly pled as a breach of contract claim.   To the extent Count 8 is based on allegations that Defendants breached the Forbearance Agreement, the Court notes that the document is not before the Court.   Nor does Plaintiff identify in the Amended Complaint or elsewhere any particular term or provision that was allegedly breach by Defendants here.   Plaintiff's Amended Complaint fails to sufficiently identify (1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by the parties; (5) when and how the parties allegedly breached the contract; or (6) how Plaintiff was injured.   *See Velez v. The Bank of N.Y. Mellon*, 2011 WL 572523, at *3 (D. Haw. Feb. 15, 2011) (explaining elements of breach of contract claim); *Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, [ ] the complaint must, at

27

minimum, cite the contractual provision allegedly violated.   Generalized

allegations of a contractual breach are not sufficient.").   To the extent Plaintiff

seeks to allege a breach of the Forbearance Agreement, she fails to state a claim.

Accordingly, Count 8 is DISMISSED as a wrongful foreclosure cause of action and

Plaintiff is GRANTED leave to amend to state a claim for breach of the Forbearance

Agreement.

### F.   **Promissory Estoppel (Count 10)**

Plaintiff alleges that she --

justifiably relied on Defendant[] BAC's statement that no
foreclosure sale would be held while she was in the loss
mitigation process, and that Plaintiff would be able to lower her
monthly mortgage payments permanently if she complied with
Defendant[] BAC's terms for a loan forbearance and then filed a
HAMP loan modification application.
      The Plaintiff's reliance was to her substantial economic
detriment, as she passed up other opportunities, including
seeking another type of loan modification, refinancing her home
loan or even bankruptcy, and now she must take extraordinary
actions to annul and void a defective and improperly held
foreclosure sale of her home.

Complaint at ¶¶ 113-114.   Defendants move to dismiss, arguing that Plaintiff does

not sufficiently allege that she was promised anything.   They assert that Plaintiff

does not state who from BANA or Fannie Mae made the alleged promises, when

they were made, nor does she identify the express terms of any promise.

28

Under Hawai'i law, the four elements of promissory estoppel are:

(1) There must be a promise; (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's promise; and (4) Enforcement of the promise is necessary to avoid injustice.   The "essence" of promissory estoppel is "detrimental reliance on a promise."

*Gonsalves v. Nissan Motor Corp. in Haw., Ltd.*, 100 Hawai'i 149, 164-65, 58 P.3d 1196, 1211-12 (2002).   A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."   *Id.* at 165, 58 P.3d at 1212.

Here, for purposes of the instant motion, Plaintiff sufficiently alleges that she justifiably relied on Defendant's alleged promise that no foreclosure sale would be held; that she passed on other opportunities like refinancing or bankruptcy; and that Defendants should have reasonably foreseen that Plaintiff would rely upon BAC's statements.   Complaint ¶¶ 113-117.   The Court finds that Plaintiff sufficiently alleges facts that, if proven, would support a plausible claim of promissory estoppel.   The Fannie Mae Motion is therefore DENIED as to Count 10.

## G.   **Fraudulent Misrepresentation (Count 11)**

In Count 11, Plaintiff alleges that:

Before, during, and after the foreclosure of Plaintiff's home, BAC and [BANA] have been fraudulently pretending to

29

have the intent and ability to modify Plaintiff's loan when in fact
[they] didn't, because it was [Fannie Mae] only who had this
power.

       [BANA] admitted in its 2011 letter to Plaintiff that it did
not own the mortgage debt, but it was instead owned by "FNMA
ACT/ACT DEFAULTS & PICONS".

       During the entire modification process, even after the
foreclosure occurred, [BANA] and BAC continued to
misrepresent to Plaintiff that it was the proper party to negotiate
a modification with when it was not and had never been.
[BANA] and BAC [have] no power to modify Plaintiff's loan.

Complaint ¶¶ 120-122.

Under Hawai'i law, the elements of a fraud claim are that: "(1) false

representations were made by defendants, (2) with knowledge of their falsity (or

without knowledge of their truth or falsity), (3) in contemplation of plaintiff's

reliance upon these false representations, and (4) plaintiff did rely upon them."

*Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000) (internal

quotation marks and citations omitted).   Fraud claims, "in addition to pleading with

particularity, also must plead plausible allegations.   That is, the pleadings must

state 'enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence of [the misconduct alleged].'"   *Cafasso ex rel. United States v. Gen.*

*Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 566, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

To the extent Plaintiff's claims are premised on a promised loan

modification, the Amended Complaint fails to offer sufficient details as to the time,

place, or content of the allegedly fraudulent statements.   Further, Plaintiff's fraud

claims with regard to a potential loan modification appear to be based on future

events or inferences of mere broken promises.

> [U]nder Hawai'i law, the false representation forming the basis
> of a fraud claim "must relate to a past or existing material fact
> and not the occurrence of a future event."   *Joy A. McElroy,*
> *M.D., Inc. v. Maryl Group, Inc.*, 107 Hawai'i 423, 433, 114 P.3d
> 929, 939 (Ct.App. 2005) (citations and block quote format
> omitted) (emphasis in original).   Further, even if the allegations
> satisfy the other elements of a fraud claim, "[f]raud cannot be
> predicated on statements which are promissory in their nature, or
> constitute expressions of intention, and an actionable
> representation cannot consist of mere broken promises,
> unfulfilled predictions or expectations, or erroneous conjectures
> as to future events[.]"   *Id.* (citations and block quote format
> omitted) (emphasis in original).   The exception to this general
> rule is that "[a] promise relating to future action or conduct will
> be actionable, however, if the promise was made without the
> present intent to fulfill the promise."   *Id.* (citations and block
> quote format omitted) (emphasis in *McElroy*).

*Doran v. Wells Fargo Bank*, 2011 WL 2160643, at *12 (D. Haw. May 31, 2011).   In

the present case, Plaintiff's allegation that Defendants somehow promised her that

she would qualify for loan modification, or even that Defendants promised her that it

would consider her application, cannot support a plausible fraud claim unless

Plaintiff can also allege that, when Defendants made those promises, they never

intended to fulfill them.   Absent such a state of mind, the alleged representations amount only to broken promises and not fraud.   The Motion is GRANTED with respect to this portion of Plaintiff's fraud claim.

Further, to the extent Plaintiff's claims are based on Defendants' alleged misrepresentation that they had the authority to modify Plaintiff's loan, when in reality, only Fannie Mae had such authority, those claims are not alleged with the particularity required by Federal Rule of Civil Procedure 9(b).   *See, e.g., Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (stating that plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice") (citation omitted).   Because, based on the foregoing, the Court finds that Plaintiff may be able to cure the deficiencies set forth above, the Court DISMISSES Count 11 with leave to amend.

### H.   Quiet Title (Count 13)

In Count 13, Plaintiff claims that she is entitled to clear title on the property.   Under Hawai'i law, a plaintiff seeking to quiet title must "prove title in and to the land in dispute [by proving] either that he has paper title to the property or that he holds title by adverse possession."   *Maui Land & Pineapple Co. v. Infiesto*, 76 Haw. 402, 407-08, 879 P.2d 507, 512-13 (1994) (citations omitted).   Although a plaintiff need not "have perfect title to establish a prima facie case, he must at least

prove that he has a substantial interest in the property and that his title is superior to that of the defendants." *Id*. at 408, 879 P.2d at 513 (citing *Shilts v. Young*, 643 P.2d 686, 689 (Alaska 1981); *Rohner v. Neville*, 365 P.2d 614, 618 (Or. 1961)).

"A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, i.e., that they have satisfied their obligations under the deed of trust.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.,* 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)).   As a result, "a borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Id.* (applying California law, *Miller v. Provost*, 33 Cal.Rptr.2d 288, 290 (Cal.App. 1994) ("[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)).

Although Plaintiff argues that she does not bring a statutory quiet title action—presumably pursuant to HRS § 669-1—she is nonetheless required to allege that she is able to tender the amount of indebtedness. *See Benoist v. U.S. Bank Nat. Ass'n*, 2012 WL 3202180, 10 (D. Haw. Aug. 3, 2012) ("[T]ender is required, regardless of whether the claim is based on common law or statute.").   That is, a

33

quiet title claim against a mortgagee or purported servicer for the mortgagee requires an allegation that plaintiffs "ha[ve] paid, or [are] able to tender, the amount of indebtedness." *Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *9 (D. Haw. Feb. 23, 2012) ("A basic requirement of an action to quiet title is an allegation that plaintiffs are the rightful owners of the property, i.e., that they have satisfied their obligations under the [note and mortgage]") (internal quotations marks and citation omitted).   Cases from this district and elsewhere rely on this rule requiring a plaintiff "to establish his superior title by showing the strength of his title as opposed to merely attacking the title of the defendant." *Amina v. Bank of N.Y. Mellon*, 2012 WL 3283513, at *3 (D. Haw. Aug. 9, 2012) (citing cases).   Plaintiff has not alleged that she has paid off the Note or is prepared to tender all amounts owing.   Accordingly, Count 13 is DISMISSED with leave to amend.

## I.     Summary

     In summary, the Fannie Mae Motion is GRANTED as follows:

- Counts 1, 2 and 5 are DISMISSED WITH PREJUDICE; and

- Counts 4, 6, 8, 11 and 13 are DISMISSED with leave to amend.

The Fannie Mae Motion is DENIED as to Counts 3 and 10.

## II.   **FHFA Motion**

Count 12 alleges that Fannie Mae is a government actor and that the non-judicial foreclosure of the property violated the Due Process Clause of the United States Constitution.   FHFA argues that, under *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), Fannie Mae is a private corporation and not a government actor for constitutional purposes.   In opposition, Plaintiff argues that Fannie Mae is a government actor following its take-over by FHFA.

Fannie Mae operates in the secondary mortgage market, purchasing residential mortgages, pursuant to 12 U.S.C. § 1716.   In 1968, Congress privatized Fannie Mae, transforming it into a "private corporation."   12 U.S.C. § 1716(b).   In 2008, Congress created FHFA to act as conservator or receiver of Fannie Mae for purposes of "reorganizing, rehabilitating, or winding up [its] affairs."   12 U.S.C. § 4617(a)(2).   FHFA then placed Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac") into conservatorships.   As Conservator, FHFA may:

> (i) take over the assets of and operate the regulated entity with all the powers of the shareholders, the directors, and the officers of the regulated entity and conduct all business of the regulated entity;
> (ii) collect all obligations and money due the regulated entity;

(iii) perform all functions of the regulated entity in the name of the regulated entity which are consistent with the appointment as conservator or receiver;
(iv) preserve and conserve the assets and property of the regulated entity; and
(v) provide by contract for assistance in fulfilling any function, activity, action, or duty of the Agency as conservator or receiver.

12 U.S.C. § 4617(b)(2)(B).

Fannie Mae argues it is not a government actor for purposes of Plaintiff's constitutional claim, despite the conservatorship. In *Lebron v. National Railroad Passenger Corp.*, the Supreme Court defined what type of entity constitutes a federal actor for the purpose of a constitutional claim. The threshold question is whether a federal actor was involved, as purely private action does not trigger constitutional protection. A corporation is part of the federal government when Congress creates the entity "by special law, for the furtherance of governmental objectives, and retain[s] for itself permanent authority to appoint a majority of the directors of that corporation." *Lebron*, 513 U.S. at 400. The Supreme Court determined in *Lebron* that Amtrak was a federal entity, created by statute for a government purpose and controlled entirely by the United States. Amtrak's board of directors consisted of nine members: the Secretary of Transportation, five appointed by the President, Amtrak's president (appointed by the Board), and two elected by the holders of preferred stock (all of which was

owned by the United States).   *Id*. at 385.   *Lebron* focused on whether the

government maintained permanent control over Amtrak.   *Id*. at 385.

Fannie Mae argues that, prior to the conservatorship, it was not under

governmental control and the conservatorship did not change anything.   It also

argues that, even if it were under government control during the conservatorship,

that control is inherently temporary.   Several federal district courts have come to

this conclusion with respect to Fannie Mae.   For example, in *Parra v. Federal Nat'l*

*Mortgage Ass'n*, the district court explained that a plaintiff could not maintain a 42

U.S.C. § 1983 claim for violation of due process rights against Fannie Mae because

it is not a "state actor."   *Parra* explained why:

> Here, plaintiff's allegations are insufficient to establish the
> necessary state action.   It is well-settled that Fannie Mae is not a
> state actor for purposes of establishing the necessary state action.
> *See Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 92 (D.D.C. 2012)
> ("[T]he imposition of conservatorship . . . did not transform
> Fannie Mae into a government actor."); *Syriani v. Freddie Mac*
> *Multiclass Certificates, Series 3365*, 2012 WL 6200251, *4
> (C.D. Cal. 2012) (citing to *Herron* in support of the proposition
> that a post-conservatorship Freddie Mac "does not become a
> governmental actor for Fifth Amendment purposes merely
> because it is placed into conservatorship"); *Bernard v. Federal*
> *Nat. Mortg. Ass'n*, 2013 WL 1282016, *3 (E.D. Mich. 2013)
> ("Fannie Mae, and similar entity Freddie Mac, are not
> governmental actors post-conservatorship."); *Fannie Mae v.*
> *Mandry*, 2013 WL 687056, *4 (E.D. Mich. 2013) (same).
> Similarly, the FHFA, which took over as Fannie Mae's
> conservator, also does not qualify as a government actor.   When

FHFA "serves as conservator," it "step[s] into the shoes of the private corporation, Fannie Mae." *Herron*, 857 F. Supp. 2d at 94 (alteration in original) (footnote omitted); 12 U.S.C. § 4617(b)(2) (A)(i) (FHFA Conservator, upon inception of conservatorship, succeeds to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director[.]"). "In such circumstances, the federal agency in its guise as a conservator or receiver of a private corporation is not a government actor." *Herron*, 857 F. Supp. 2d at 94 (emphasis added); *see also Syriani*, 2012 WL 6200251, at *4 ("Freddie Mac does not become a governmental actor for Fifth Amendment purposes merely because it is placed into conservatorship. The [FHFA's] 'control' is merely the same control that Freddie Mac had before conservatorship.").

*Parra v. Federal Nat'l Mortg. Ass'n*, 2013 WL 5638824, at *3 (C.D. Cal. Oct. 16, 2013) (alterations in *Parra*).

In opposition, Plaintiff argues that Fannie Mae's role as HAMP administrator and the government's ownership of a controlling interest in Fannie Mae stock demonstrate that it is a state actor under government control. According to Plaintiff, "Fannie Mae is not expected to ever return to its pre-conservatorship status, [therefore] the foreclosure of Plaintiff's home was a government action." Mem. in Opp'n to FHFA Motion at 8. Several courts have rejected these arguments. For example, the court in *Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 96 (D.D.C. 2012), held that the government's "warrant to purchase common stock and its ownership of non-voting Senior Preferred Stock do not give the United States

permanent control over Fannie Mae and do not make Fannie Mae a government entity under *Lebron*."   It also held that even if the duration of the conservatorship is indefinite, "FHFA's control over Fannie Mae is temporary."   *Id.* at 95.   Plaintiff has not provided any compelling authority or argument to persuade this Court to rule otherwise.

The Court agrees with those courts in this Circuit and others that have considered and rejected Plaintiff's argument that Fannie Mae is a government actor by virtue of the FHFA conservatorship.   Consistent with these decisions, this Court concludes that the FHFA's conservatorship does not create the type of permanent control required under *Lebron*.   *See, e.g., Parra v. Federal Nat'l Mortg. Ass'n*, 2013 WL 5638824, at *3; *Herron v. Fannie Mae*, 857 F. Supp. 2d at 92; *Fannie Mae v. Mandry*, 2013 WL 687056, at *4 (E.D. Mich. Feb.26, 2013) ("The Mandrys, similar to the plaintiffs in *Herron*, *Lopez [v. Bank of America, N.A.*, 2013 WL 150460 (W.D .Mich. Jan. 14, 2013)]; *Kapla [v. FNMA (In re Kapla)*, 2012 WL 6569739 (Bankr. E.D. Mich. Dec. 14, 2012)]; *Rubin [v. Fannie Mae*, 2012 WL 6000572 (E.D. Mich. Nov. 30, 2012)]; *Syriani [v. Freddie Mac Multiclass Certificates, Series 3365*, 2012 WL 6200251 (C.D. Cal. July 10, 2012)]*, argue here that because FHFA, a federal agency, became Fannie Mae's conservator in 2008, the

case law holding that it is not a state actor is no longer relevant.    This argument has been soundly and consistently rejected.").[4]

Accordingly, Plaintiff fails to state a claim against Fannie Mae for violation of her constitutional rights.    The FHFA Motion is GRANTED and Count 12 is DISMISSED WITH PREJUDICE.

## III.    **Amendment**

Plaintiff is GRANTED leave to file a Second Amended Complaint in conformity with this Order.    Plaintiff may file a Second Amended Complaint by **January 24, 2014** that attempts to clarify the basis of her claims.    This Order limits Plaintiff to filing a Second Amended Complaint that attempts to cure the specific deficiencies identified in this Order.    That is, this Order does not grant Plaintiff leave to amend to file a Second Amended Complaint that asserts any different theories or causes of action.

---

[4] In *Syriani v. Freddie Mac Multiclass Certificates, Series 3365*, 2012 WL 6200251, at *4 (C.D. Cal. July 10, 2012), the district court, relying on *Lebron*, concluded that Freddie Mac is not a government actor by virtue of the FHFA conservatorship.

## CONCLUSION

On the basis of the foregoing, the Court (1) GRANTS IN PART and DENIES IN PART Defendants Federal National Mortgage Association, Bank of America, N.A. formerly known as Countrywide Bank, FSB and successor by merger to BAC Home Loans Servicing, LP formerly known as Countrywide Home Loans Servicing, LP, and Bank of America Corporation's Motion to Dismiss Amended Complaint, filed on May 31, 2013; and (2) GRANTS Defendant Federal Housing Finance Agency's Motion to Dismiss the Amended Complaint, filed on May 31, 2013.   Plaintiff is GRANTED leave to file a Second Amended Complaint in conformity with this Order by **January 24, 2014**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI'I, December 31, 2013.



Derrick K. Watson
United States District Judge

---

Bridget Dias v. Federal National Mortgage Association, et al.; CV 12-00394 DKW KSC; **ORDER (1) GRANTING DEFENDANT FEDERAL HOUSING FINANCE AGENCY'S MOTION TO DISMISS AMENDED COMPLAINT, AND (2) GRANTING IN PART AND DENYING IN PART REMAINING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**